FILED

2021 Jun-22  PM 04:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| EARNEST LEE WALKER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00258-ACA-SGC |
| | ) | |
| GWENDOLYN GIVENS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The plaintiff, Earnest Lee Walker, Sr., has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States. (Doc. 1). The plaintiff names the following defendants in the complaint: Governor Kay Ivey; the Alabama Department of Corrections ("ADOC") Commissioner Jefferson Dunn; Warden Gwendolyn Givens;[1] Deputy Warden Kenneth Peters; Chief Steward A. Johnson; Steward II Brady; Steward Rogers; Sergeant A. Edmonds; Sergeant Mitchell; and Sergeant Harrison. (Doc. 1 at 1, 11-12). Walker seeks monetary, injunctive, and declaratory relief. (Doc. 1 at 5, 26). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

---

[1] The plaintiff incorrectly spells the Warden's last name as "Givins." (Doc. 1 at 1, 11).

# I. STANDARD OF REVIEW

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(internal quotation marks omitted).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones*, 549 U.S. at 215.

A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed.  *Jones v. Florida Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).  However, it still must allege factual allegations that "raise a right to relief above the speculative level."  *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. FACTUAL ALLEGATIONS

The plaintiff is currently incarcerated at W.E. Donaldson Correctional Facility ("Donaldson").  (Doc. 1 at 2).  On September 24, 2018, Walker was working as a cook under the supervision of Stewards Johnson and Brady.  (Doc. 1 at 13).  Brady instructed Walker to assist Chaplin David with taking a new food cart to the back gate.  (Doc. 1 at 13).  As Chaplin David and the plaintiff pushed the food cart across

the kitchen floor and black top, it fell over onto Walker's right foot.  (Doc. 1 at 13-14).  Subsequent x-rays revealed the plaintiff sustained broken toes on his right foot.  (Doc. 1 at 14).  Walker alleges Johnson and Brady were aware of the condition of the kitchen floor and black top and knew it was dangerous to push equipment on these surfaces.  (Doc. 1 at 14).

Between January and April 2019, the plaintiff worked in the kitchen dish room under the supervision of Stewards Johnson, Brady, and Rogers.  (Doc. 1 at 14).  The plaintiff's duties included dumping food trays, which eventually resulted in Walker being diagnosed with "stenosing tenosynovitis," also known as "trigger finger."  (Doc. 1 at 14).   The plaintiff underwent surgery on his left hand.  (Doc. 1 at 14).  Johnson, Brady, and Rogers were aware that another inmate, Antonio Reed, suffered from this condition prior to Walker's diagnosis.  (Doc. 1 at 14).

On April 29, 2019, at approximately 9:45 A.M., the plaintiff was standing in the East Law Library talking with another inmate, with his right hand on the door frame.  (Doc. 1 at 15).  Sergeant A. Edmonds called lock down for East Hall but did not secure the library door.  (Doc. 1 at 15).  As Sergeant Harrison walked past the library door, he "intentional[l]y closed the door on Walker's hand." (Doc. 1 at 15).  The plaintiff pushed the door off his hand and notified both Edmonds and Harrison that Harrison closed the door on his hand.  (Doc. 1 at 15).  Edmonds escorted Walker

to the infirmary, where Harrison admitted he closed the door on the plaintiff's hand. (Doc. 1 at 15).

On January 21, 2020, at approximately 10:00 A.M., two inmates assaulted the plaintiff in B Unit. (Doc. 1 at 15). No officer was present. (Doc. 1 at 15). Walker sustained two black eyes and suffered blurred vision. (Doc. 1 at 15). Sergeant Mitchell became aware of the assault after seeing the plaintiff's injuries on January 24, 2020. (Doc. 1 at 15).

From June 2016 until the filing of the complaint, the plaintiff filed numerous formal grievances against various officers concerning "their unprofessional conduct." (Doc. 1 at 16). As a result, Walker has suffered retaliation from officers in the form of false disciplinaries and assignments to less desirable and more dangerous units in the correctional facility. (Doc. 1 at 16).

The plaintiff complains the conditions at Donaldson "are in an exceptional state of disrepair" and require major improvements. (Doc. 1 at 16). A/B, C/D, X/Y, and V Blocks have an inadequate number of showers and poor ventilation. (Doc. 1 at 17). The plumbing and electrical systems need repair, and the new toilet system has a time-controlled flushing mechanism that "forces the men in the blocks to live in close confines with their own human waste." (Doc. 1 at 17). Water leaks from sprinklers. (Doc. 1 at 17). There is mold and fungus in the showers, an infestation of insects and rodents, inadequate lighting in living areas, no communication system

for emergencies, and no water fountains or ice machines in the blocks. (Doc. 1 at 17-18). A waste treatment facility near the prison causes the stench of raw sewage throughout the prison. (Doc. 1 at 17-20).

Fans and heaters in the K, L, M, N, and O dorms are covered in dust and debris that keep them from functioning properly. (Doc. 1 at 18). The sinks, toilets, and showers do not operate properly and are not handicap accessible. (Doc. 1 at 18). There is no covered walkway or shelter in the East and West hallways to protect inmates from inclement weather, which causes a substantial risk of injury. (Doc. 1 at 18-19, 20).

The kitchen is filthy and in deplorable condition. (Doc. 1 at 19). There are standing pools of water, dirt, and rodent droppings in food preparation and storage areas, and an infestation of insects and rodents. (Doc. 1 at 19). [2] The drains throughout the kitchen have collapsed and breed bacteria. (Doc. 1 at 19). The toilet near the kitchen is not secured properly, leaks water, and is filthy. (Doc. 1 at 19).

The exhaust fans in the East and West gyms do not function properly. (Doc. 1 at 20). The gyms are also infested with insects and rodents. (Doc. 1 at 20). The ceilings in both gyms are dilapidated, causing debris to fall on inmates. (Doc. 1 at

---

[2] The plaintiff concedes holes in the kitchen floors and ceiling recently were "patched up." (Doc. 1 at 19).

20).  Additionally, rainwater sits in the courtyards, attracting insects and rodents. (Doc. 1 at 20).

Special Housing Units are unsanitary and do not have proper ventilation, heat, or air.  (Doc. 1 at 20).  The heat in the summer is intolerable and the units are infested with insects and vermin.  (Doc. 1 at 20-21).  Some units do not have lights or running water.  (Doc. 1 at 21).  The inmates in those units are not provided exercise or outdoor recreation on a consistent basis.  (Doc. 1 at 21).

Walker complains Donaldson is overcrowded, and staffing shortages compromise his safety.  (Doc. 1 at 21).  For example, one officer is often responsible for supervising anywhere from 96 to 130 inmates.  (Doc. 1 at 21).  The plaintiff contends officers are required to work excessive overtime, which affects their ability to remain alert, and officers often sleep on duty.  (Doc. 1 at 22).  Additionally, security cameras are scarce and officers cannot see certain areas from their stations. (Doc. 1 at 22).

Because educational and vocational programs are limited, the lack of activities, exercise, and work contribute to violence at the prison.  (Doc. 1 at 22). Prison officials ignore inmates' complaints that they are fearful of assault, causing those inmates to "resort to their own devices to protect themselves."  (Doc. 1 at 22). When inmates attempt to defend themselves, they incur disciplinary action, which affects their chances of parole.  (Doc. 1 at 22-23).

The plaintiff cites the United States Department of Justice's 2019 report on Alabama's state prisons for men as evidence of the defendants' knowledge of the alleged conditions.  (Doc. 1 at 23).   The plaintiff contends he is exposed daily to a substantial risk of harm due to overcrowding and staffing deficiencies, to which the defendants are deliberately indifferent.  (Doc. 1 at 25-26).

For relief, Walker seeks monetary, declaratory, and injunctive relief, including release from prison.  (Doc. 1 at 27).

## III. ANALYSIS

### A. Official Capacity Claims

The plaintiff's claims against the defendants in their official capacities for monetary damages are barred by sovereign immunity.  Specifically, the Eleventh Amendment to the United States Constitution bars § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).   Eleventh Amendment immunity also bars claims for money damages brought against officials and employees of state entities sued in their official capacities. *Id.* at 101–02.  However, the Eleventh Amendment does not bar official capacity claims seeking prospective injunctive relief to remedy continuing constitutional violations.  *See Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing *Ex parte Young*, 209 U.S. 123, 168 (1908)).  Accordingly, Walker's claims

against the defendants in their official capacities for damages are due to be dismissed.

## B. Governor Kay Ivey

Walker asserts claims against Ivey solely in her official capacity as Governor. (Doc. 1 at 11). Specifically, the plaintiff alleges Ivey, "[a]s chief executive of the State of Alabama," has authority to "exercise all functions and duties of the department (of corrections) . . . acting by herself or by and through such administrative divisions or such officers or employees or individuals as she may designate." (Doc. 1 at 11) (citing Ala. Code §§ 14-1-1.1, -17). Other than naming Ivey as a defendant, the plaintiff does not include specific factual allegations against Ivey personally in the body of the complaint. (Doc. 1). Merely stating Ivey is liable because she is Governor of the State of Alabama is insufficient.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014). Rather, a plaintiff must allege the supervisor "directly participated in the unconstitutional conduct" or show "a causal connection between the supervisor's actions and the alleged constitutional violation." *Hoever v. Belleis*, 703 F. App'x 908, 911 (11th Cir. 2017) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). To establish a causal connection, a plaintiff must demonstrate either that the supervisor

"instituted a custom or policy that results in deliberate indifference to constitutional rights" or that the supervisor directed subordinates "to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1331 (11th Cir. 2007) (internal quotation marks omitted and alterations adopted).  Because Walker does not make specific factual allegations against Ivey personally, does not demonstrate that she instituted a custom or policy indifferent to his rights, and does not allege she had any knowledge of any unlawful action of her subordinates, his claims against Ivey are due to be dismissed for failing to state a claim upon which relief can be granted.

## C. Conditions of Confinement

The plaintiff alleges various conditions of confinement at Donaldson have violated his constitutional rights and caused him injury.  (Doc. 1 at 13-26).  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  To establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], . . . (2) the defendant[s'] 'deliberate indifference' to that condition . . . and (3) causation . . . ." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes and internal citations omitted).  Whether a particular condition of confinement constitutes cruel

and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). While prison officials must furnish prisoners with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates,'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349. "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*. at 347. Therefore, extreme deprivations are required to make out a conditions of confinement claim under the Eighth Amendment. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca*, 995 F.2d at 1535. To establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that

condition, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.* at 1536 (internal quotation marks omitted).

### 1.  Claims on Behalf of Other Inmates

To the extent Walker attempts to bring any of his Eighth Amendment conditions of confinement claims on behalf of other inmates, they are due to be dismissed.  (*See* Doc. 1 at 18-19, 22-23).  While the plaintiff may represent himself *pro se* pursuant to 28 U.S.C. § 1654, that right does not extend to the representation of other individuals.  *See Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008). Thus, to the extent Walker alleges any claims on behalf of other inmates, they are due to be dismissed for failing to state a claim for relief.

### 2.  Stewards Johnson & Brady – September 24, 2018 Incident

The plaintiff alleges that on September 24, 2018, he was pushing a food cart across the kitchen floor and black top when the cart fell over onto his foot.  (Doc. 1 at 13-14).  As a result, he sustained several broken toes.  (Doc. 1 at 14).  The plaintiff complains defendants Johnson and Brady knew the condition of the kitchen floor and black top and are, thus, liable for his injury.  (Doc. 1 at 14).

Walker's claim concerning the overturned food cart does not rise to the level of a constitutional violation.  As an initial matter, the plaintiff does not allege whether the kitchen floor or black top are in poor condition or whether these surfaces

are merely unsuitable for pushing a food cart.  Assuming Walker complains the floors were in a state of disrepair, they do not constitute an extreme deprivation under the Eighth Amendment.  *See Chandler*, 379 F.3d at 1289.  Likewise, they would not amount to an "unquestioned and serious deprivation of basic human needs."  *Rhodes*, 452 U.S. at 347.

The plaintiff has not established Johnson and Brady were deliberately indifferent to the state of the floors, either.  Walker has merely offered conclusory allegations the defendants had "objective and subjective knowledge" of the condition of the floors.  (Doc. 1 at 14).  However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Walker does not allege he personally notified Johnson and Brady of the condition of the floors, or that Johnson and Brady were otherwise aware of the condition of the floors but failed to remedy the problem.

At most, Johnson and Brady may have been negligent in ordering the plaintiff to push the food cart across the kitchen floor and black top.  However, the law is clear that negligent conduct alone does not state a constitutional claim for relief under § 1983.  *See Farmer*, 511 U.S. at 835.  Indeed, courts have consistently held similar incidents, such as slip-and-fall accidents involving prisoners, do not give rise to a federal cause of action.  *See, e.g., Coleman v. Sweetin,* 745 F.3d 756, 764 (5th

Cir. 2014) (agreeing with district court that, as a matter of law, "prisoner slip-and-fall claims almost never serve as the predicate for constitutional violations"); *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (slippery condition arising from standing water in prison shower was not a condition posing a substantial risk of serious harm as required under the Eighth Amendment, even where inmate was on crutches and had warned prison employees he was at heightened risk of falling since "slippery floors constitute a daily risk faced by members of the public at large"); *Marsh v. Jones*, 53 F.3d 707, 711–12 (5th Cir. 1995) (inmate's claim for monetary damages resulting from defendants' failure to warn that a leaking or sweating air conditioning unit made the floor wet was "a garden-variety negligence claim" that was not actionable under § 1983).

Based on the foregoing, the plaintiff's Eighth Amendment conditions of confinement claim against defendants Johnson and Brady based on the September 24, 2018 incident is due to be dismissed for failing to state a claim upon which relief can be granted.

### 3. *Stewards Johnson, Brady, & Rogers – Dumping Food Trays*

From January to April 2019, Walker worked in the prison dish room under the supervision of defendants Johnson, Brady, and Rogers.  (Doc. 1 at 14).  The plaintiff alleges he was responsible for dumping food trays, which resulted in him being diagnosed with "stenosing tenosynovitis," also known as "trigger finger."

(Doc. 1 at 14).   The plaintiff underwent surgery on his left hand as a result.  (Doc. 1 at 14).  Walker claims Johnson, Brady, and Rogers knew inmate Antonio Reed also suffered from this same condition and were, therefore, on notice of the risk of harm.   (Doc. 1 at 14).

First, dumping food trays does not constitute cruel and unusual punishment or an extreme deprivation of basic human needs.  Moreover, other than the plaintiff's own conclusory assertions, he has not pointed to any facts that would suggest dumping food trays caused his medical condition.  Indeed, Walker does not allege any medical professional determined dumping food trays contributed to his or inmate Reed's trigger finger or that Johnson, Brady, or Rogers knew there was a connection between dumping trays and trigger finger and intentionally disregarded such risk.

Because the plaintiff has not shown the defendants were deliberately indifferent to a cruel and unusual condition of confinement, or that such deliberate indifference to the condition caused his injury, the claim is due to be dismissed.  *See LaMarca*, 995 F.2d at 1535.  Even if a medical connection could be established, Walker has alleged no more than negligence on the part of Johnson, Brady, and Rogers, which does not state a constitutional claim for relief.  *See Mosley v. Zachery*, 966 F.3d 1265, 1276 (11th Cir. 2020) ("Prison officials are not constitutionally liable

for their negligent, and even civilly reckless, violation of a prisoner's Eighth Amendment rights.").

### 4. *Other Conditions of Confinement at Donaldson*

Walker further complains of numerous conditions of confinement, some of which alone would not state a claim for relief.  Specifically, he alleges Donaldson suffers from overcrowding; staffing shortages; inadequate ventilation, heating, and air; insect and rodent infestation; a filthy kitchen; mold and fungus in the showers; dilapidated gyms; stagnant water; inadequate lighting, plumbing, and electrical systems; a lack of water fountains and ice machines; an inadequate communication system for inmates to contact prison staff in an emergency; too few urinals and toilets; lack of outdoor recreation; and areas which are not handicap accessible. (Doc. 1 at 16-26).

The United States Supreme Court has emphasized "*[s]ome* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone."  *Wilson*, 501 U.S. at 304-05 (internal quotation marks omitted).  Walker has alleged sufficient facts at this juncture to warrant a response from defendants Dunn, Givens, and Peters.

### D. Failure to Protect

The plaintiff alleges defendants Edmonds and Mitchell failed to protect him from harm on two separate occasions during his incarceration at Donaldson. (Doc. 1 at 15). Walker's claims against Edmonds and Mitchell are due to be dismissed.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer*, 511 U.S. at 832-33 (internal quotation marks omitted). "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cnty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).[3] It is when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm, that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," cannot establish liability on the part of the official. *Id*. at 838. Also, the known risk of injury must be a "strong likelihood, rather than a mere possibility." *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (internal quotation marks omitted).

Once it is established an institutional official knew of a substantial danger or risk to an inmate, it must then be shown the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, a plaintiff must produce sufficient evidence the defendant's deliberate indifference to a known danger or risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### 1. Sergeant Edmonds

The plaintiff alleges that at approximately 9:45 A.M. on April 29, 2019, he was standing in the East Law Library talking to another inmate with his right hand

18

on the door frame.  (Doc. 1 at 15).  Edmonds called lock down for East Hall but did

not secure the East library door.  (Doc. 1 at 15).  As Harrison walked past the library

door, he "intentional[l]y closed the door on [the plaintiff's] hand." (Doc. 1 at 15).

Walker pushed the door off his hand and notified both Edmonds and Harrison that

Harrison had closed the door on his hand.  (Doc. 1 at 15).  Edmonds escorted Walker

to the infirmary, where Harrison admitted he closed the door on the plaintiff's hand.

(Doc. 1 at 15).

The plaintiff does not allege Edmonds failed to secure the library door

knowing the plaintiff would be subjected to a substantial risk of harm.  Instead,

Walker's assertion Edmonds failed to lock the library door raises a claim of

negligence, at most, which does not rise to the level of a constitutional violation.  *See*

*Farmer*, 511 U.S. at 835.  Thus, Walker's claim against Edmonds is due to be

dismissed.

### 2.  Sergeant Mitchell

The plaintiff alleges that at approximately 10:00 A.M. on January 21, 2020,

two inmates assaulted him in B Unit.  (Doc. 1 at 15).  No officer was present.  (Doc.

1 at 15).  Walker sustained two black eyes and suffered blurred vision.  (Doc. 1 at

15).  Walker asserts Mitchell became aware of the assault after seeing his injuries on

January 24, 2020.  (Doc. 1 at 15).

The plaintiff has not alleged a claim for relief against defendant Mitchell for failing to protect him from an inmate assault. Walker does not contend he notified Mitchell of any impending threat to his safety before the inmate assault on January 21, 2020. Indeed, the complaint is devoid of facts indicating Mitchell was aware of any "particularized threat or fear" of harm to the plaintiff beforehand. *Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003). Officers must possess enough details about a threat to enable them to conclude it presents a strong likelihood of injury. *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019). Moreover, the plaintiff acknowledges Mitchell only became aware of the inmate assault upon seeing his injuries four days later. (Doc. 1 at 15). "The occurrence of the prisoner's injury is . . . not enough, on its own, to show after the fact a substantial risk of serious harm." *Rhiner v. Sec'y, Fla. Dept't of Corrs.*, 817 F. App'x 769, 775 (11th Cir. 2020). Because the plaintiff does not allege Mitchell was aware of a real threat of harm to him prior to the assault and then failed to protect him, Walker's claim is due to be dismissed.

### E. Excessive Force

The plaintiff contends Harrison intentionally slammed the library door on his hand on April 29, 2019, which the undersigned construes as an excessive force claim. (Doc. 1 at 15). Excessive force allegations must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503

U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374-75 (11th Cir. 1999). In *Hudson*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley*, 475 U.S. at 321.

Walker's claim Harrison intentionally slammed a door on his hand, causing him pain, warrants a response from this defendant. Accordingly, the plaintiff's Eighth Amendment excessive force claim against Harrison is due to proceed.

### F. Retaliation

Walker alleges he filed numerous formal complaints against various officers concerning "their unprofessional conduct." (Doc. 1 at 16). As a result, the plaintiff contends he suffered retaliation in the form of false disciplinaries and assignments to less desirable and more dangerous units in the prison. (Doc. 1 at 16). The plaintiff's First Amendment retaliation claim warrants dismissal.

"First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (internal quotation marks omitted).  To establish a retaliation claim, a complaint must adequately allege (1) a prisoner's speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech or act; and (3) there is a causal connection between the retaliatory actions and the adverse effect on the speech or act.  *Id.*  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).  Furthermore, the causation prong of a retaliation analysis "asks whether the defendant[ ] [was] subjectively motivated" by the plaintiff's protected act or speech.  *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

The complaint is devoid of allegations associating any of the named defendants with the plaintiff's retaliation claim.  Claims asserting unconstitutional retaliation must be factual, and mere conclusory allegations of retaliation will not suffice.  *See Hornsby v. Jones,* 188 F. App'x 684, 690 (10th Cir. 2006).  The plaintiff's complaint "must contain enough facts to state a claim of retaliation by prison officials that is 'plausible on its face.'" *Douglas*, 535 F.3d at 1321 (quoting

*Twombly*, 550 U.S. at 570).  Because Walker does not associate any defendant with his retaliation claim, it is due to be dismissed.

Moreover, the plaintiff cannot hold the defendants liable in their capacities as supervisors for the actions of unnamed officers who allegedly retaliated against him. (*See* Doc. 1 at 16).  As stated herein, supervisory officials cannot be held liable under § 1983 for the actions of their subordinates on the basis of respondeat superior or vicarious liability.  *See Hartley*, 193 F.3d at 1269.

### G. Release from Prison

To the extent Walker requests release from prison due to the alleged unconstitutional conditions of confinement at Donaldson (*see* Doc. 1 at 26), release from custody does not constitute an available remedy in a § 1983 action.  *See Abella v. Rubino*, 63 F.3d 1063, 1066 (11th Cir. 1995).  Thus, the plaintiff cannot seek release from confinement in this action.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except the plaintiff's Eighth Amendment conditions of confinement claim against defendants Dunn, Givens, and Peters, and his Eighth Amendment excessive force claim against defendant Harrison, be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon

which relief can be granted.  The undersigned **FURTHER RECOMMENDS** the remaining claims be **REFERRED** to the undersigned for further proceedings.

## V. NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation.  The plaintiff must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of

fact and recommendations.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

**DONE** this 22nd day of June, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE